# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

WISCONSIN MANUFACTURERS
AND COMMERCE INC.,

      Plaintiff,

  v.

                                           Case No. 3:25-cv-155

KAREN HYUN,
*in her official capacity as
Secretary-Designee of the Wisconsin
Department of Natural Resources,*

      Defendant.

## Declaration of Scott Manley

Scott Manley, under penalty of perjury, declares as follows:

1.    I am the Executive Vice President of the Plaintiff in this action, Wisconsin Manufacturers and Commerce Inc. ("WMC").

2.    I have personal knowledge of the information stated in this declaration and submit this declaration in support of WMC's proposed first amended complaint.

3.    WMC's headquarters is located at 2 Buttonwood Court, in the City of Madison, Dane County, Wisconsin, 53718. WMC's headquarters has been located at this address since June 2025. Before June 2025, WMC's headquarters was located at 501 East Washington Avenue, in the City of Madison, Dane County, Wisconsin, 53703.

4.  WMC is Wisconsin's largest business trade association, representing roughly 3,700 employers of every size and from every sector of the economy.

5.  WMC is a membership-based business trade association with member businesses of all sizes located geographically throughout Wisconsin and engaged in a variety of businesses across the Wisconsin economy.

6.  WMC is a non-profit business organized as a membership association under Section 501(c)(6) of the Internal Revenue Code.

7.  The purpose of WMC is to represent the interests of its members, including by working to make Wisconsin the best place in the nation to do business. This goal includes ensuring that WMC members are not subject to unlawful or excessive regulation. This goal also includes advocating for the enactment of laws and policies that allow businesses and economic investment to flourish. WMC performs this advocacy work before various governmental entities, including the Wisconsin Legislature, the Wisconsin Governor's Office, and Wisconsin executive-branch agencies. WMC's advocacy work often involves political and economic issues.

8.  WMC regularly engages in litigation on behalf of its members to represent their interests. To this end, WMC regularly commences legal actions as a plaintiff or co-plaintiff and files or joins non-party briefs in

courts. WMC does not expect remuneration from its members for its litigation efforts.

9.     WMC has members for whom all of the following is true: (1) they are categorized as major stationary sources of air emissions; (2) they manufacture nonroad engines or install nonroad engines into nonroad vehicles; (3) they turn on such engines to test them inside their facilities; (4) and they have DNR-issued air-pollution-control operation permits for those facilities.

10.     For this declaration, I reviewed one such permit that belongs to a WMC member. This permit limits the amount of gasoline that may be used in a given engine test cell on a monthly basis. This member manufactures nonroad engines or installs nonroad engines into nonroad vehicles at the permitted facility.

11.     WMC uses litigation as a form of political expression and political association. WMC uses litigation as a vehicle for expressing its views and the views of its members on legal issues and public policy. WMC engages in litigation efforts to protect its members' interests from governmental overreach and unlawful actions.

12.     WMC also uses litigation as a means for communicating useful information to the public. To this end, WMC regularly publicizes its litigation efforts to help educate the public on law and public policy and to inform the public of WMC's views on such issues. WMC does so by

issuing press releases, placing litigation-related content on its web site, and participating in interviews with news media.

13. WMC views its litigation efforts as an important component of its advocacy work described above.

14. The WMC Litigation Center is organized as a non-profit, public-interest law firm under Section 501(c)(3) of the Internal Revenue Code.

15. The WMC Litigation Center regularly engages in litigation with the goal of lessening the burdens of government.

16. I am the Vice Chairman of the WMC Litigation Center.

17. The WMC Litigation Center is an affiliate of WMC, though they are legally separate entities.

18. The WMC Litigation Center and WMC share the same goals described above. The WMC Litigation Center represents WMC and other clients in legal actions to foster and protect the free enterprise system. In support of WMC's mission to make Wisconsin the most competitive state in the nation to do business, the WMC Litigation Center defends the business community from government entities that act beyond their authority.

19. The WMC Litigation Center represents WMC in this case.

20. The WMC Litigation Center does not charge its clients attorney fees or otherwise expect remuneration from its clients or from

WMC's members.

21.    WMC has been the target of threats, harassment, reprisals, and public hostility, likely due to WMC's exercise of its First Amendment rights to freedom of expression and freedom of association. More specifically, this pattern has likely resulted from hostility against WMC due to its advocacy work and its stances on public policy issues.

22.    In August of 2020, a group of persons smashed the doors and windows of WMC's headquarters and set fire to the front vestibule and exterior of WMC's building using gasoline. This group also spray-painted a politically-charged message on the exterior of WMC's building. This incident was reported to law enforcement, and two people were convicted in federal court of felony arson as a result.

23.    On or about February 13, 2013, several individuals dressed in black and wearing black ski masks to conceal their identities smashed windows at WMC's headquarters, threw numerous glass containers filled with paint at the exterior of the building, and attempted to destroy WMC's exterior surveillance cameras. This incident occurred on the same day as WMC's Business Day in Madison event, which was also protested. Business Day in Madison is WMC's largest annual conference of business people, and it focuses on policies important to the business community. The incident was reported to the police, who indicated the attack was likely perpetrated by Antifa members.

24. In March of 2011, several labor unions organized a boycott of businesses, including WMC member businesses, whose employees contributed to the 2010 election campaign of then-Wisconsin Governor Scott Walker. The boycott, organized primarily by local government police and fire unions, was in retaliation for Governor Walker's proposed public employee union collective bargaining reforms.

25. On or about June 12, 2011, protestors vandalized the exterior of WMC's headquarters with "solidarity fist" graffiti because of WMC's support for Governor Walker's public employee union collective bargaining reforms, which ultimately became 2011 Wisconsin Act 10. The incident was reported to law enforcement.

26. In June of 2008, a wealthy and prominent owner of a large Wisconsin company announced a boycott of WMC members, pledging to not conduct business with any businesses that support WMC. The publicly-stated rationale for the boycott was WMC's grassroots advocacy surrounding elections for the Wisconsin Supreme Court.

27. In approximately May of 1995, a group of demonstrators protested WMC's public policy positions outside WMC headquarters. The protesters burned an effigy of then-Wisconsin Governor Tommy Thompson outside of WMC's building and also set fire to WMC's exterior monument sign. The WMC sign was burned to the point of being a total loss. WMC reported this incident to law enforcement.

28.    On May 4, 1990, someone threw a Molotov cocktail in the rear vestibule of WMC's headquarters. It is believed that the perpetrator did so in response to WMC's policy positions related to mining. The carpet in the rear vestibule caught fire, and significant smoke damage was done as the air handling system distributed smoke throughout the building. This incident was reported to law enforcement, and the fire department concluded it was an act of arson.

29.    Before WMC relocated its headquarters in June 2025, one or more persons regularly wrote messages with chalk on the sidewalk outside WMC's headquarters. The chalk messages were harassing and critical of WMC's positions on tax policy issues and its political advocacy.

30.    Based on the pattern of harassment discussed above, I fear that WMC's members would face similar harassment if their membership with WMC became publicly known.

31.    Based on WMC's and its members' past experiences involving boycotts, retribution, and violence, the anonymity of WMC's members is of critical importance to WMC.

32.    On many occasions, I have spoken to WMC members about future anticipated litigation against the government. During these conversations, WMC members have almost never been willing to be named as a plaintiff in litigation against the government. WMC members have told me that they do not want to be identified in such litigation

because they fear retaliation by the government, consumers, shareholders, or other persons.

33.    If WMC were required to identify one or more of its members in the course of its litigation, WMC's ability to litigate on behalf of its members would be greatly weakened. WMC's constitutional right to freedom of association would also be compromised. Based on my past conversations with WMC members described above, it will often be impossible for WMC to find one or more affected members who are willing to be identified in the course of WMC's litigation. If WMC were to identify any effected member in the course of litigation without that member's consent, WMC's effort to recruit and retain members would be undermined.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 17, 2026.

_____
Scott Manley